**No. 25-50414**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**KAREN MONSERRAT CONCHAS MESRAJE,
and STACI SEAN SMITH,**
*Plaintiffs – Appellants,*

v.

**UNITED STATES OF AMERICA,**
*Defendant – Appellee.*

On Appeal from the United States District Court
For the Western District of Texas

**PLAINTIFFS' – APPELLANTS' BRIEF**

*Appeal of the April 1, 2025, Judgment in the U.S. District
Court, Western District of Texas, San Antonio Division,
Civil Action No. SA-24-CV-00183-OLG, Hon. Orlando Garcia Presiding*

**GUERRA LLP**

J. Caleb Rackley (TX Bar #24056173)
crackley@guerrallp.com
Francisco Guerra IV (TX Bar #00796684)
fguerra@guerrallp.com
Oscar Quiroz (TX Bar #24104764)
oquiroz@guerrallp.com
875 East Ashby Place, Suite 1200
San Antonio, Texas 78247
(210) 447-0500 tel (210) 447-0501 fax

**COUNSEL FOR APPELLANTS**

# CERTIFICATE OF INTERESTED PERSONS

No. 25-50414

_____

KAREN MONSERRAT CONCHAS MESRAJE
and STACI SEAN SMITH,
*Plaintiffs-Appellants,*
v.

UNITED STATES OF AMERICA
*Defendant-Appellee.*

_____

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and/or entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Appellants:**
   – Karen Monserrat Conchas Mesraje
   – Staci Sean Smith

2. **Trial and Appellate Counsel for Appellant:**
   – J. Caleb Rackley
   (Appellate counsel only)
   *Lead Appellate Counsel*
   Texas State Bar No. 24056173
   crackley@guerrallp.com
   **Guerra LLP**
   875 East Ashby Place, Suite 1200
   San Antonio, Texas 78212

- Francisco Guerra IV
  Texas State Bar No. 00796684
  fguerra@guerrallp.com
  **Guerra LLP**
  875 East Ashby Place, Suite 1200
  San Antonio, Texas 78212

- Oscar Quiroz
  Texas State Bar No. 24104764
  oquiroz@guerrallp.com
  **Guerra LLP**
  875 East Ashby Place, Suite 1200
  San Antonio, Texas 78212

3. **Appellee:**

- United States of America

4. **Trial and Appellate Counsel for Appellees:**

- Huiju Jeon
  Assistant United States Attorney
  New York State Bar No. 5447792
  huiju.jeon@usdoj.gov
  **United States Attorney's Office**
  601 NW Loop 410, Suite 600
  San Antonio, Texas 78216

- Darryl S. Vereen
  Assistant United States Attorney
  Texas State Bar No. 00785148
  darryl.vereen@usdoj.gov
  **United States Attorney's Office**
  601 NW Loop 410, Suite 600
  San Antonio, Texas 78216

*/s/ J. Caleb Rackley*
J. Caleb Rackley,
Attorney of Record for
Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to FED. R. APP. P. 34(a)(1) and 5TH CIR. R. 28.2.3, Appellants do not believe oral argument is necessary in this matter because the facts and legal arguments are adequately presented in the briefs and record. Appellants asserted only *respondeat superior* claims against Appellee (brought under the Federal Tort Claims Act based on Appellee's employee's negligence), and this Court's sole task is to conduct a *de novo* review as to whether Appellants raised a genuine issue of material fact as to each element of the claim. The record is clear, and it does not support the district court's summary judgment ruling. As such, this Court's decisional process would not be significantly aided by oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

In the event the Court concludes otherwise, Appellants request an opportunity to participate in the oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................ ii

STATEMENT REGARDING ORAL ARGUMENT ................................ iv

TABLE OF AUTHORITIES .................................................... vi

JURISDICTIONAL STATEMENT ........................................... 1

STATEMENT OF THE ISSUES ............................................. 3

STATEMENT OF THE CASE ............................................... 4

SUMMARY OF THE ARGUMENT.......................................... 8

ARGUMENT................................................................. 10

    I.    Standard of Review............................................... 10

    II.    Appellee Is Liable Under the Federal Tort Claims Act ....... 12

        A.    Sgt. Luengo Was in the Line of Duty Under the FTCA ................................................... 12

        B.    The Coming-and-Going Rule Does Not Apply............. 19

        C.    Alternatively, the Special Mission Exception Applies........................................................ 21

CONCLUSION AND PRAYER ............................................. 25

CERTIFICATE OF SERVICE .............................................. 27

CERTIFICATE OF COMPLIANCE ....................................... 28

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................... 2

*Blow v. City of San Antonio*,
236 F.3d 293 (5th Cir. 2001) ..................................................... 2

*Bodin v. Vagshenian*,
642 F.3d 481 (5th Cir. 2006) ................................................... 10

*Clark v. Wright Nat'l Flood Ins. Co.*,
380 F. Supp. 3d 523 (E.D. La. 2019 ........................................... 2

*Counts v. Guevara*,
328 F.3d 212 (5th Cir. 2003) ................................................... 10

*Craft v. United States*,
542 F.2d 1250 (5th Cir. 1976) ............................................ 4, 16

*Davis v. Amazon.com Servs. LLC*,
2022 WL 18034360 (W.D. Tex. Oct. 6, 2022) .................. 10, 11, 12, 13, 14

*Garcia v. United States*,
88 F.3d 318 (5th Cir. 1996) ....................................................... 7

*Garcia v. United States*,
2012 WL 4867513 (S.D. Tex. Oct. 12, 2012) ....................................*passim*

*Garza v. United States*,
809 F.2d 1170 (5th Cir. 1987) ............................................. 1, 3

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
939 F.2d 1257 (5th Cir. 1991) ................................................... 2

*Kristensen v. United States,*
993 F.3d 363 (5th Cir. 2021) ...................................................... 3

*Lutz v. United States,*
685 F.2d 1178 (9th Cir. 1982) ............................................. 5, 11

*McGarrah v. United States,*
294 F. Supp. 669 (D.C. Miss. 1969) ........................................ 7

*Painter v. Amerimex Drilling I, Ltd.,*
561 S.W.3d 125 (Tex. 2018) ..................................................... 3

*Pilgrim v. Fortune Drilling Co.,*
653 F.2d 982 (5th Cir. 1981) ................................................... 11

*Rodriguez v. City of Corpus Christi,*
129 F.4th 890 (5th Cir. 2025) ................................................... 1

*Transcor Astra Grp. S.A. v. Petrobras Am. Inc.,*
650 S.W.3d 462 (Tex. 2022) ..................................................... 3

*United States v. Culp,*
346 F.2d 35 (5th Cir. 1965) ...................................................... 4

*Upton v. Gensco, Inc.,*
962 S.W.2d 620 (Tex. App.—Fort Worth 1997, pet. denied) ............. 12-13

*Urata v. United States,*
No. 12CV1277 WQH WMC, 2012 WL 6553503, at *7 (S.D. Cal. Dec. 13, 2012) ................................................................................ 14, 15

*Vasquez v. United States,*
2024 WL 2331801 (N.D. Tex. May 22, 2024) .................................... 14, 15

*Weaver v. United States Coast Guard,*
857 F. Supp. 539 (S.D. Tex. 1994) .................................................... 1, 4, 5

*Williams v. United States*,
352 F.2d 477 (5th Cir. 1965) ...................................................................... 3

## **Statutes**

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1346(b)(1) ...................................................................... 1, 2, 4

28 U.S.C. § 2671 ................................................................................... 3-4

## **Rules**

Fed. R. App. P. 4(a)(1)(B)(i) .................................................................. 1

Fed. R. App. P. 32 ................................................................................ 19

Fed. R. App. P. 56(a) ............................................................................. 2

# JURISDICTIONAL STATEMENT

## 1. Jurisdiction of the District Court

Jurisdiction was proper in the district court, pursuant to 28 U.S.C. § 1346(b)(1), based on the personal injury caused by the negligent or wrongful act or omission of an employee of the United States government while acting within the course and scope of his office or employment.

## 2. Basis for Jurisdiction in the Court of Appeals

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, which provides jurisdiction of appeals from all final decisions of the district courts of the United States.

## 3. Timeliness of Appeal

The district court's order was signed on April 1, 2025 (ROA.25-50414.285-94), and judgment was entered the same day (ROA.25-50414.4). Appellants timely filed their Notice of Appeal on May 28, 2025. ROA.25-50414.295-97.[1]

## 4. Final Judgment

---

[1] Appellants were authorized to file their Notice of Appeal within 60 days after entry of judgment or order because the United States is a party to this litigation. *See* FED. R. APP. P. 4(a)(1)(B)(i) (permitting the same).

This appeal arises from the district court's final judgment disposing of all claims asserted by all parties. ROA.25-50414.285-94.

# STATEMENT OF THE ISSUES

In a summary judgment proceeding below, the district court was required to review the evidence in the light most favorable to the Appellants as nonmovants. The court was required to take all evidence in favor of Appellants as true and resolve all doubts in Appellants' favor. As such, a summary judgment could not appropriately issue if Appellants presented more than a scintilla of evidence as to each element of their claims, thus raising a genuine issue of material fact. When considered *de novo*, did the district court err in granting summary judgment on Appellants' negligence-based *respondeat superior* claim?

## STATEMENT OF THE CASE

In December 2021, United States Marine Corps ("USMC") Sargent Avery Humberto Luengo travelled from McAllen, Texas, to San Antonio, Texas—under orders from the United States Navy—to attend a USMC recruitment training program. ROA.25-50414.178:5-10.

Sgt. Luengo, a salaried employee of the military, was authorized to drive a government motor vehicle ("GMV") while in Texas. *See generally* ROA.25-50414.227-64 (authorizing Luengo's use of the GMV). Sgt. Luengo did not drive his own personal vehicle while in San Antonio, but drove only the GMV. ROA.25-50414.222-26. In addition to receiving a salary, Sgt. Luengo also received a *per diem* stipend from the Navy. ROA.25-50414.183:5-16.

**The Car Crash.**  On the evening of December 6, 2021, Sgt. Luengo was dismissed from the training and returned the Crowne Plaza Hotel in San Antonio, where he was required by the military to stay. ROA.25-50414.222-26. After changing into his civilian clothes, Sgt. Luengo left the hotel to pick up food from a nearby restaurant. *See id.* The meal would be covered by Sgt. Luengo's *per diem* stipend. ROA.25-50414.183:9-16. While on the way to the restaurant, Stg. Luengo disregarded a stop sign

and entered the same lane as Appellants, who maintained the right-of-way. ROA.25-50414.9. With no time for Appellants to react, a crash occurred. *See id.*[2]

**Appellants' Injuries**. Appellants suffered catastrophic injuries, and they continue to suffer to this day. ROA.25-50414.15-24 (specifically, ROA.25-50414.17-20) (detailing the severity of Appellants' physical injuries from the crash). Appellants have undergone numerous medical evaluations and treatments because of the injuries, including MRIs, chiropractic therapy, and the prescription of opioid medications and epidural steroid injections. *See id.*[3]

**The Lawsuit**. This appeal arises from Appellants' lawsuit against Appellee asserting negligence and *respondeat superior* claims pursuant to the Federal Torts Claim Act. *See* ROA.25-50414.6-12.

**Course and Scope**. Appellee answered the lawsuit and asserted a defense that sovereign immunity had not been waived pursuant to the

---

[2] Appellant Conchas was driving a white Nissan Versa; Appellant Smith was a passenger. ROA.25-50414.6, 9.

[3] Appellant Conchas suffers from headaches, brain fog, radiculopathy, and severe neck and back pain. *See id.* She will potentially need to undergo invasive cervical disc replacement surgery due to persistent pain from the accident. *See id.* Appellant Smith suffered a nondisplaced fracture of his fingertip, a nondisplaced avulsion fracture of thumb, and numerous neck, spine and pelvic injuries in the crash. ROA.25-50414.27-35 (specifically, ROA.25-50414.28-32). Smith will potentially need cervical disc replacement surgery if his symptoms do not improve. *See id.*

Federal Tort Claims Act. ROA.25-50414.53-58 (specifically, ROA.25-50414.56). Appellee argued that Appellants have not shown Appellee's liability because, as the argument went, Sgt. Luengo was not in the line of duty when the crash occurred. *See id.* (specifically, ROA.25-50414.130-37). Appellants maintain Sgt. Luengo *was* in the line of duty at the time of the crash because, among other things, he was under orders from the Navy at all times while in San Antonio, including when he left the Crowne Plaza Hotel to get food. ROA.25-50414.6-12 (specifically, ROA.25-50414.9, 10); *see also* ROA.25-50414.222-26 (specifically, ROA.25-50414.225):

| SECTION IX - FEDERAL DRIVER CERTIFICATION | | |
|---|---|---|
| I certify that the information on this form *(Sections I thru VII)* is correct to the best of my knowledge and belief. | | |
| 72a. NAME AND TITLE OF DRIVER<br>SGT AVERY H. LUENGO | 72b. DRIVER'S SIGNATURE | 72c. DATE<br>20211207 |

| SECTION X - DETAILS OF TRIP DURING WHICH CRASH OCCURRED | |
|---|---|
| 73. ORIGIN<br>CROWNE PLAZA HOTEL | 74. DESTINATION<br>BEIJING HOUSE CHINESE |
| 75. EXACT PURPOSE OF TRIP<br>GETTING FOOD | |

| 76. TRIP BEGAN | DATE<br>20211206 | TIME *(Include AM or PM)*<br>1745 | 77. CRASH OCCURRED | DATE<br>20211206 | TIME *(Include AM or PM)*<br>1800 |
|---|---|---|---|---|---|
| 78. AUTHORITY FOR THE TRIP WAS GIVEN TO THE OPERATOR<br>☒ ORALLY    ☐ IN WRITING *(Explain)* | | | 79. WAS THERE ANY DEVIATION FROM DIRECT ROUTE?<br>☒ NO    ☐ YES *(Explain)* | | |
| 80. WAS THE TRIP MADE WITHIN ESTABLISHED WORKING HOURS?<br>☒ YES    ☐ NO *(Explain)* | | | 81. DID THE OPERATOR, WHILE EN ROUTE, ENGAGE IN ANY ACTIVITY OTHER THAN THAT FOR WHICH THE TRIP WAS AUTHORIZED?<br>☒ NO    ☐ YES *(Explain)* | | |

| 82. COMPLETED BY DRIVER'S SUPERVISOR | a. DID THIS CRASH OCCUR WITHIN THE EMPLOYEE'S SCOPE OF DUTY?<br>☒ YES    ☐ NO | | | |
|---|---|---|---|---|
| | b. COMMENTS  HE IS currntly on ORDERS. HE was Getting FOOD Afer Class. | | | |
| 83a. NAME AND TITLE OF SUPERVISOR<br>GYSGT GARCIA, DANIEL SNCOIC | 83b. SUPERVISOR'S SIGNATURE | 83c. DATE<br>12/7/2021 | 83d. TELEPHONE NUMBER<br>210-717-8789 | |

STANDARD FORM 91 (REV. 9/2020) PAGE 4

Indeed, Luengo's supervisor, Gunnery Sergeant Daniel Garcia, confirmed: (1) Luengo's trip was authorized and made during established

working hours; (2) Luengo made no deviations from the direct route; (3) Luengo did not engage in any activity other than that for which the trip was authorized; and (4) the crash occurred while Luengo was in the scope of his duties. ROA.25-50414.222-26.[4] As Garcia confirmed, Luengo was "on orders" when "getting food after class." *See* ROA.25-50414.225.

**The District Court's Summary Judgment**. Appellee filed a motion for summary judgment on October 22, 2024. *See* ROA.25-50414.125-51. Appellants filed a Summary Judgment Response (ROA.25-50414.152-273), and Appellee filed a Reply (ROA.25-50414.274-80). The Honorable Orlando Garcia issued an Order granting summary judgment on April 1, 2025. ROA.25-50414.285-94. The district court's order dismissed Appellants' claims for lack of subject matter jurisdiction. *Id*.

**This Appeal**. Appellants timely filed a Notice of Appeal on May 28, 2025 (ROA.25-50414.295-97), and now timely file this brief seeking reversal of the district court's ruling.

---

[4] As Appellee's summary judgment motion confirmed, Sgt. Luengo's trip was not a personal errand. *See* ROA.25-50414.127 (admitting Luengo "was allowed to use the GOV to get food, but otherwise not for personal errands"); *see also* ROA.25-50414.230 ("government employees are strictly prohibited from using their assigned GMV [government motor vehicle] for personal use"); *cf*. ROA.25-50414.265 ("taking a GMV to your place of residence is not permissible under any circumstances"). Rather, the accident happened "during an official trip." *See* ROA.25-50414.196:21-197:2.

## SUMMARY OF THE ARGUMENT

Summary judgment on Appellants' *respondeat superior* claim would not have issued had the court below properly viewed the evidence—and all inferences derived therefrom—in the light most favorable to the Appellants and resolved all doubts in their favor.

Appellants have satisfied their burden to raise fact issues as to each element of their *respondeat superior* claim. Appellants have shown Sgt. Luengo was an employee of the Navy and acting in the line of duty at the time of the crash at issue, thus imposing vicarious liability on the Appellee under the Federal Tort Claims Act.

The line of duty determination is governed in this case by Texas *respondeat superior* law. As such, courts look to various factors such as whether the employee was on duty, leave or at liberty (Luengo was not); whether the employee was working on the employer's business and following orders (Luengo was); and whether the employee was uniformed and/or equipped by the employer and was traveling on  business with travel expenses, instructions, or expectations (the Navy equipped Luengo to carry out his mission by, among other things, subsidizing his trip).

Moreover, courts look to special factors characteristic of military service, and they weigh in favor of a finding that Luengo was in the line of duty when the crash occurred.

Finally, as demonstrated herein, the "coming-and-going" rule does not apply and, even if the Court holds otherwise, the government is still vicariously liable because Luengo was on a "special mission."

This Court must reverse the lower court's decision and remand this case for a trial on the merits.

# ARGUMENT

The United States is vicariously liable for Sgt. Luengo's negligent conduct. Indeed, such vicarious liability arises when the United States is sued under the Federal Tort Claims Act ("FTCA") for the negligence of military personnel, such as Luengo, that occurs "in the line of duty." *See* 28 U.S.C. § 1346(b).

The line of duty determination is governed by state *respondeat superior* law and certain "special factors characteristic of military discipline." *See Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993); *Garza v. United States*, 809 F.2d 1170, 1171 (5th Cir. 1987); *Bettis v. United States*, 635 F.2d 1144, 1147 (5th Cir. 1981); *Hinson v. United States*, 257 F.2d 178, 181 (5th Cir. 1958).[5]

## I.    STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 896 (5th Cir. 2025). Summary

---

[5] While courts also consider whether the negligent servicemember was "on liberty" or leave when the negligence occurred, the servicemember's liberty status alone does not ordinarily relieve the government of liability. *See Weaver v. U.S. Coast* Guard, 857 F. Supp. 539, 544 (S.D. Tex. 1994) (citing *Washington v. United States*, 868 F.2d 332, 333 (9th Cir. 1989)).

judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if there the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party may defeat a motion for summary judgment by countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact. *See Clark v. Wright Nat'l Flood Ins. Co.*, 380 F. Supp. 3d 523, 528 (E.D. La. 2019) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991)).

Under a *de novo* review, the Court reviews the record as a whole, viewing all facts in the light most favorable to the non-moving party and does not defer to any factual assumptions the district court apparently made. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001). As such, summary judgment is appropriate only if no reasonable fact finder could find for the nonmovant. *Anderson*, 477 U.S. at 248.

Where, as here, federal jurisdiction is based on *respondeat superior* claims pursuant to 28 U.S.C. § 1346(b)(1), this Court determines liability

based on the substantive law of the state in which the tortious act or omission occurred. *See Garza v. U.S.*, 809 F.2d 1170, 1171 (5th Cir. 1987) (quoting *Williams v. United States*, 352 F.2d 477 (5th Cir. 1965)). Here, because the allegedly negligent act occurred in Texas, the Federal Tort Claims Act relies on Texas law to govern the issue of Appellee's liability. *See Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021).

## II.   APPELLEE IS LIABLE UNDER THE FEDERAL TORT CLAIMS ACT

Under Texas' doctrine of *respondeat superior*, if an employee commits a tort while acting in their capacity as an employee, their employer may be held vicariously liable for their actions. *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 478 (Tex. 2022). As such, liability is imputed from employee to employer if the tort is committed within the course and scope of employment. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018).

### A. Sgt. Luengo Was in the Line of Duty Under the FTCA

In circumstances such as here, when the United States is sued under the FTCA for the negligent acts of military personnel, the United States is liable only for acts committed in the "line of duty." *See* 28 U.S.C.

§§ 1346(b)(1), 2671. As mentioned *supra*, the "line-of-duty determination is governed by state *respondeat superior* law . . . but considered in the light of the 'special factors characteristic of military activity and discipline'" *Weaver v. United States Coast Guard*, 857 F. Supp. 539, 542 (S.D. Tex. 1994) (internal citations omitted).

The special factors characteristic of military service include whether: (1) the servicemember was traveling pursuant to specific orders when the negligence occurred; and (2) the servicemember was governed by specific military regulations enforceable by military punishment and designed precisely to govern the conduct in which the servicemember was engaged when the negligence occurred. *See Hallberg v. Hillburn*, 434 F.2d 90, 92 (5th Cir. 1970); *United States v. Culp*, 346 F.2d 35, 36 (5th Cir. 1965) (per curiam) (concluding a soldier was in the line of duty when he was traveling under orders for a permanent change of station, was compensated for his travel time, and was paid a travel allowance in advance); *Craft v. United States*, 542 F.2d 1250, 1255 (5th Cir. 1976) (holding a soldier was in the line of duty when he injured a child while mowing the lawn around an army housing base pursuant to orders from

his superiors); *Hinson*, 727 F. Supp. at 178; *Lutz v. United States*, 685 F.2d 1178, 1183 (9th Cir. 1982); *Weaver*, 857 F. Supp. at 542.

The "special factors" clearly apply in this case and, as such, this Court should hold Sgt. Luengo was in the line of duty. As to the first factor, Sgt. Luengo was under specific orders authorizing his trip to San Antonio for recruitment training and continued to be under these orders for the duration of his trip. ROA.25-50414.197:22-25, 198:1-13. Sgt. Luengo understood that he was to report to San Antonio and was authorized to travel in a government motor vehicle for the duration of the trip. *Id*.; *see also* ROA.25-50414.230 (authorizing Luengo's use of the GMV). Sgt. Luengo was paid to go to San Antonio as a salaried employee and received a *per diem* stipend from the Navy while on the trip. ROA.25-50414.183:5-16. Additionally, Luengo understood he continued to be under orders when traveling to get food, and distinguished this from "running a personal errand," as the latter is disallowed by the USMC. ROA.25-50414.186:3-12.[6]

---

[6] Whether an employee is working in the course and scope of employment is not necessarily determined by whether he does exactly what he is told, as Appellee may contend. *See Garcia v. United States*, No. C-12-108, 2012 WL 4867513, at *2 (S.D. Tex. Oct. 12, 2012) (emphasizing that if slight deviations were not allowed, any act without specific instructions would exonerate the employer of liability).

Additional factors courts use to determine whether an employee was acting in the course and scope of their duties are: (1) control of time—whether the employee was on duty, leave, or at liberty; (2) the purpose of the mission—whether the employee was working on the employer's business, accomplishing a purpose in the employer's interest, and following orders, or in other words, whether the employee so deviated from orders that he was no longer considered on his employer's mission but on his own; and (3) the means and manner—whether the employee was uniformed and/or equipped by the employer and was traveling on business with travel expenses, instructions, or expectations. *See Garcia v. United States*, No. C-12-108, 2012 WL 4867513, at *3 (S.D. Tex. Oct. 12, 2012).

In *Garcia*, a naval officer was authorized to leave the naval base after an extensive training seminar to rest before returning to base for a pinning ceremony. *Garcia*, 2012 WL 4867513, at *2. While returning to base, he fell asleep at the wheel and collided with two cars, severely injuring the plaintiffs. *Id*. The court held that the naval officer was in the course and scope of his employment at the time of the accident, reasoning

that *because he was authorized to leave the base*, and because he was not on leave nor on liberty, the naval officer was on duty. *Id.* at *3.[7]

Lastly, the court held that although the officer drove his own vehicle and was not reimbursed for the travel, he was impliedly approved to leave the base in his personal vehicle and did not deviate from that route, placing him in the line of duty. *Id.* at *5.

Likewise, summary judgment evidence in this case shows that Sgt. Luengo was not on leave nor on liberty while in San Antonio and was allowed to get food for himself using the GMV. ROA.25-50414.181:20-182:4. Sgt. Luengo and GySgt. Daniel Garcia agreed the trip to get food was taken during Sgt. Luengo's working hours—despite being dismissed and changing into civilian clothes after attending the training. *See*

---

[7] Furthermore, the *Garcia* court held the officer was in the line of duty because, although he left the base instead of resting on base after the training, he was not so disobedient to his given orders as to take him out of the employer's mission or subject him to discipline or punishment. *Id.* at *3.  The officer's superiors gave him the option to stay on base to rest or return to his duty station off-base to rest. *Id.*  Importantly, the court emphasized that slight deviations from an employer's instructions does not take the employee out of the course and scope of his employment. *See id.* at *3-4 (citing *McGarrah v. United States*, 294 F. Supp. 669, 672 (D.C. Miss. 1969); *Garcia v. United States*, 88 F.3d 318, 321 (5th Cir. 1996)).

Moreover, Sgt. Luengo's actions leading up to the car accident were not "so disobedient to his given orders as to take him out of [Appellee's] mission or subject him to discipline or punishment." *Id.* at *3. Although Sgt. Luengo was not specifically ordered to purchase food at any particular Chinese restaurant, he was generally allowed to pick up food for himself. ROA.25-50414.186:3-12.

ROA.25-50414.201:19-22 (Sgt. Luengo confirming he did not disagree with his superior's assessment that the accident occurred during his established working hours); *see also* ROA.25-50414.222-26. As such, Sgt. Luengo continued to be under Appellee's authority and control while traveling to get food pursuant to the control of time factor. *See Garcia*, 2012 WL 4867513, at *3 (holding that a naval officer was under the control and authority of the Navy while away from the naval base he was stationed at, and thus in the line of duty).

Moreover, Sgt. Luengo understood that he was not authorized to "run personal errands" while on duty, and he made it clear in his testimony that—according to his employer—getting food was not considered a personal errand. *See id.* As such, Sgt. Luengo would not have faced discipline for leaving the Crowne Plaza to get food. *See* ROA.25-50414.230 ("[G]overnment employees are strictly prohibited from using their assigned GMV for personal use."); *c.f.* ROA.25-50414.265 ("taking a GMV to your place of residence is not permissible under any circumstances"). Additionally, this excursion did not in any way extricate Sgt. Luengo from his purpose of traveling to and being in San Antonio to attend recruitment training.

Therefore, Sgt. Luengo continued to be in the line of duty pursuant to the purpose of mission factor. *See Garcia*, 2012 WL 4867513, at *3-4 (holding slight deviations from orders that would not have subjected a naval officer to discipline and did not render him outside of the course and scope of his employment).

Further, while the naval officer in *Garcia* operated under an implied authority to leave the base in his personal vehicle, Sgt. Luengo had the express authority to travel using the GMV. *See* ROA.25-50414.265-74 (authorizing Sgt. Luengo's use of the GMV). Further, Sgt. Lunego received a salary from the USMC, as well as a *per diem* stipend while on assignment in San Antonio, thereby being "equipped" by Appellee to carry out its mission of training Sgt. Luengo. ROA.25-50414.183:5-15; *see also Garcia*, 2012 WL 4867513, at *3 (explaining that an employee is in the course and scope of their employment if they were supplied the means and manner by the employer to carry out their negligent actions).

Lastly, Sgt. Luengo took a direct route from the hotel to the restaurant and did not deviate or make any detours on his way back to the hotel, putting Sgt. Luengo in the line of duty under the means and

manner factor. ROA.25-50414.181:3-15. *See Garcia*, 2012 WL 4867513, at *5 (concluding that a naval officer was in the line of duty because the means and manner of his travel was impliedly authorized by his employer).

As such, Appellants ask this Court to consider these factors, as well as the "special factors characteristic to military activity" to determine that, at an absolute minimum, there is a genuine issue of material fact as to whether Sgt. Luengo was in the line of duty at the time of the car accident.

## B. The Coming-and-Going Rule Does Not Apply

In Texas, "an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given to him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (quoting *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003)). Of course, under the "coming-and-going" rule, employers are not generally liable for the acts of employees while traveling to and from work. *Davis v. Amazon.com Servs. LLC*, No. 6:20-CV-01178-JCM, 2022 WL 18034360,

at *1-2 (W.D. Tex. Oct. 6, 2022) (citing *Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982, 987 (5th Cir. 1981)).

Appellee contended below that the coming-and-going rule applies because Sgt. Luengo was dismissed from training for the day and was not specifically ordered by his superior to get food from a particular restaurant. ROA.25-50414.136-37. This runs contrary to Sgt. Luengo's testimony regarding what he understood his duties entailed while he was in San Antonio. Specifically, Sgt. Luengo testified that he was in San Antonio on official business to receive additional recruiter training, which was obviously in furtherance of his USMC employment. ROA.25-50414.181:20-182:4; s*ee also Davis*, WL 18034360, at *3 (holding a fact issue exists as to whether the plaintiff's conduct fell within the coming-and-going rule).

Because Sgt. Luengo was on official business while in San Antonio in the furtherance of his employment with Appellee, his conduct while traveling to get food does not fall within the coming-and-going rule. *See Lutz v. United States*, 685 F.2d 1178, 1183 (9th Cir. 1982) (holding a soldier living on an Air Force base was in the line of duty when his dog bit a civilian because his assignment of maintaining military property

"invoked such special factors . . . peculiar to the military employment situation."). As the court in *Davis* put it in analyzing an Amazon employee's attendance at out-of-town company training, the employee "would not have been in Texas if Amazon had not required him to attend the training [and,] . . . . [f]urther, . . . Amazon reimbursed [the employee] for his trip." *See Davis*, WL 18034360, at *3. Thus, the court held, the coming-and-going rule did not apply. The same is true in this case. Sgt. Luengo would not have in San Antonio if the USMC had not required him to attend the training and, further, the government subsidized his trip by providing him with a *per diem* stipend for food, paying for lodging, and providing him with a GMV. *See* ROA.25-50414.183:5-16, 198:21-23.

## C. <u>Alternatively, the Special Mission Exception Applies</u>

In the unlikely event the Court holds the coming-and-going rule applies, it is important to note that the special mission exception is an important limitation/exception. "The special mission exception provides that an employee is within the course and scope of employment if the employee is on a special mission at the employer's direction or is otherwise performing a task to further the employer's business with the employer's approval." *Davis,* 2022 WL 18034360, at *2 (quoting *Upton v.*

*Gensco, Inc.*, 962 S.W.2d 620, 621 (Tex. App.—Fort Worth 1997, pet. denied)).[8]

Appellee also asserted below that Sgt. Luengo's conduct did not fall within the special mission exception. *See* ROA.25-50414.130-37. But this does not comport with Sgt. Luengo's testimony about his duties while in San Antonio. Sgt. Luengo testified that he was authorized to use the GMV for official business, including "to grab something to eat and then come back." ROA.25-50414.181:20-182:4. Sgt. Luengo understood that he was on a special mission while in San Antonio—to receive recruiter training in the furtherance of the Navy—and did not deviate from this special mission. Sgt. Luengo was authorized to use the GMV to get food and understood a trip to get food was not considered a personal errand (which might be considered a deviation from the special mission). ROA.25-50414.186:3-12. Further, Sgt. Luengo's trip was subsidized by the Navy, as Sgt. Luengo received a *per diem* stipend for food, lodging was paid for by the Navy, and Sgt. Luengo did not drive his own personal vehicle, but was provided with a GMV to get to and from the training.

---

[8] Deviation from the special mission renders *respondeat superior* inapplicable. *Davis,* 2022 WL 18034360, at *2 (quoting *Upton v. Gensco, Inc.*, 962 S.W.2d 620, 621 (Tex. App.—Fort Worth 1997, pet. denied)).

ROA.25-50414.183:5-16, 198:21-23; *see also Garcia v. United States*, No. C-12-108, 2012 WL 4867513, at *2, (S.D. Tex. Oct. 12, 2012) (holding a naval officer was in the line of duty although he was driving his own personal vehicle and was not reimbursed for his travel when he caused a car accident).

As such, even if this Court were to apply the coming-and-going rule to Sgt. Luengo's actions, the special mission exception applies, as Sgt. Luengo never deviated from the mission and was acting within his duties when he committed the negligent conduct at issue. *See Davis*, 2022 WL 18034360, at *3 (denying Defendant's Motion for Summary Judgment because a fact issue existed as to whether an employee who was sent by their employer for training in Texas was on a special mission); *see also Vasquez v. United States*, No. 4:23-cv-727-P, 2024 WL 2331801, at *3 (N.D. Tex. May 22, 2024) (holding an IRS employee was acting within the course and scope of his duty when he hit a pedestrian while traveling to a job site).

Under these circumstances, Sgt, Luengo was clearly in the line of duty at the time of the accident, imputing liability upon Appellee for Luengo's negligent acts/omissions. *Urata v. United States,* No. 12CV1277

WQH WMC, 2012 WL 6553503, at *7 (S.D. Cal. Dec. 13, 2012) (holding a soldier was in the line of duty at the time the accident occurred because she was acting pursuant to orders to travel from her home to a temporary duty station, and that she did not deviate from these orders for "personal purposes," thus her actions fell within the special errand exception.).

Indeed, the court in *Vasquez* held an IRS employee's actions "fit squarely within the 'special mission' exception" because he was "(1) traveling to a temporary jobsite other than his official duty station, (2) on an overnight trip, (3) in a different city—over 200 miles away, (4) at the direction of and for the benefit of his employer, and (5) was reimbursed for his mileage, parking, and overnight lodging." *See Vasquez*, 2024 WL 2331801, at *4. As described herein, the same scenario rings true in this instance.

At bottom, Sgt. Luengo understood he was always under orders while in San Antonio and was not authorized to use the GMV for personal errands. ROA.25-50414.186:3-12; *see also* ROA.25-50414.230 (prohibiting the use of the GMV for personal errands). Further, Sgt. Luengo was expressly authorized to use the GMV and did so at the time of the accident. *See generally* ROA.25-50414.227-64. Sgt. Luengo

understood he could face military discipline for violations of the orders, including unauthorized use of the GMV. ROA.25-50414.230. This comports with the holding in *Craft*, where this Court held that a special factor to consider for the line-of-duty analysis is whether the servicemember was subject to military discipline. *See Craft v. United States*, 542 F.2d 1250, 1255 (5th Cir. 1976).

## CONCLUSION AND PRAYER

Appellants clearly satisfied their burden to submit more than a scintilla of evidence as to the elements of their *respondeat superior* claim under the FTCA. At a minimum, they have raised fact issues as to all elements of the claim. As such, this Court should hold Appellants satisfied their burden to demonstrate a genuine issue of material fact as to whether Sgt. Luengo was in the line of duty at the time of the accident.

Accordingly, Appellants Karen Monserrat Conchas Mesraje and Staci Sean Smith respectfully ask this Court to reverse the district court, remand this case for a trial on the merits, and award Appellants all further relief to which they are justly entitled to at law and/or in equity.

Dated September 3, 2025.

Respectfully submitted,
*/s/ J. Caleb Rackley*

**GUERRA LLP**

J. Caleb Rackley
Texas State Bar No. 24056173
crackley@guerrallp.com
Francisco Guerra, IV.
Texas State Bar No. 00796684
fguerra@guerrallp.com
Oscar Quiroz
Texas State Bar No. 24104764
oquiroz@guerrallp.com
875 East Ashby Place,
Suite 1200
San Antonio, Texas 78212
(210) 447-0500
(210) 447-0501(facsimile)

**ATTORNEYS FOR
APPELLANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Huiju Jeon
Assistant United States Attorney
New York State Bar No. 5447792
huiju.jeon@usdoj.gov
UNITED STATES ATTORNEY'S OFFICE
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Darryl S. Vereen
Assistant United States Attorney
Texas State Bar No. 00785148
darryl.vereen@usdoj.gov
UNITED STATES ATTORNEY'S OFFICE
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

***Attorneys for Appellees***

*/s/ J. Caleb Rackley*
J. Caleb Rackley, Attorney of
Record for Appellants

## CERTIFICATE OF COMPLIANCE

1.    This document with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.1, this document contains 4,766 words.

2.    This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, Version 16.78 in a 14-point Century Schoolbook font.

*/s/ J. Caleb Rackley*
J. Caleb Rackley, Attorney of
Record for Appellants