# Case No. 25-50414

# In the United States Court of Appeals for the Fifth Circuit

———————————

**Karen Monserrat Conchas Mesraje and Staci Sean Smith,**

Plaintiffs-Appellants,

v.

**United States of America,**

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the Western District of Texas

———————————

**APPELLEE'S BRIEF**

———————————

**Justin R. Simmons**
United States Attorney

**Huiju Jeon**
Assistant United States Attorney
**Darryl S. Vereen**
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7315
(210) 384-7312 fax
Huiju.jeon@usdoj.gov
darryl.vereen@usdoj.gov

Attorneys for Appellee

## Recommendation on Oral Argument

Oral argument is unnecessary. The briefs and record adequately present the facts and legal arguments relevant to this appeal, and oral argument would not significantly aid the decisional process. *See* Fed. R. App. P. 34(a)(2)(C).

# Table of Contents

Recommendation on Oral Argument ............................................... i

Table of Contents ............................................................ ii

Table of Authorities ....................................................... iv

Jurisdiction ............................................................... 1

Statement of the Issue ..................................................... 1

Statement of the Case ...................................................... 1

Standard of Review ......................................................... 3

Summary of the Argument .................................................... 4

Argument ................................................................... 4

    I.    Appellants bear the burden to demonstrate the unequivocal waiver of sovereign immunity here ............. 4

    II.   Appellants fail to carry their burden to show with competent material evidence an unequivocal waiver of sovereign immunity ...................................... 6

        A.    In Texas, an employee is not acting within the course and scope of his employment when he leaves for a meal even during his business trip funded and authorized by an employer. .................... 6

        B.    Binding precedent shows Sgt. Luengo was not acting within the course and scope of his employment at the time of the accident. ................. 11

        C.    Appellants fail to cite to binding authorities or material facts in the record that support their position. ................................................ 21

Conclusion ................................................................ 27

Certificate of Service .................................................... 28

Certificate of Compliance ............................................................ 28

# Table of Authorities

Cases                                                          Page(s)

*Barrier v. United States*, No. DR-23-CV-58-AM,
    2025 WL 2409084 (W.D. Tex. June 18, 2025)............................ 21
*Bennett v. United States*,
    102 F.3d 486 (11th Cir. 1996) .............................................passim
*Bennett*,
    102 F.3d ...................................................................................... 19
*Bodin v. Vagshenian*,
    462 F.3d 481 (5th Cir. 2006) ..................................................... 5, 6
*Brownback v. King*,
    592 U.S. 209 (2021) ................................................................... 4, 5
*Cameron Int'l Corp. v. Martinez*,
    662 S.W.3d 373 (Tex. 2022)...................................................passim
*Cannon v. United States*,
    243 F.2d 71 (5th Cir. 1957) ..................................................... 7, 13
*City of Houston v. Sanchez*,
    No. 14-23-00152-CV, 2024 WL 3713206 (Tex. App.—Houston
    [14th Dist.] Aug. 8, 2024, no pet.) ................................. 18, 20, 21
*Clark v. Am.'s Favorite Chicken Co.*,
    110 F.3d 295 (5th Cir. 1997) ................................................. 6, 23
*Conway v. United States*,
    647 F.3d 228 (5th Cir. 2011) ........................................................ 7
*Craft v. United States*,
    542 F.2d 1250 (5th Cir. 1976) ............................................. 13, 14
*Davis v. Amazon.com Servs., LLC*,
    No. 6:20-CV-01178-JCM, 2022 WL 18034360 (W.D. Tex. Oct. 6,
    2022) .................................................................................... 25, 26
*Duran v. United States*,
    No. 2:20-CV-00179, 2023 WL 2499941 (S.D. Tex. Feb. 21, 2023)
    .................................................................................................. 20
*EAN Holdings, LLC v. Arce*,
    636 S.W.3d 290................................................................... 16, 19
*Freeman v. United States*,
    556 F.3d 326 (5th Cir. 2009) ................................................... 4, 5

*Garcia v. United States*,
   No. C-12-108, 2012 WL 4867513 (S.D. Tex. Oct. 12, 2012) 19, 21, 25, 26
*Garza v. United States*,
   809 F.2d 1170 (5th Cir. 1987) ...................................................... 6
*Hallberg v. Hilburn*,
   434 F.2d 90 (5th Cir. 1970) ...................................................... 12
*Kariuki v. Tarango*,
   709 F.3d 495 (5th Cir. 2013) ...................................................... 4
*Lane v. Pena*,
   518 U.S. 187 (1996) ...................................................... 4
*Lutz v. United States*,
   685 F.2d 1178 (9th Cir. 1982) ...................................................... 25
*Martin v. Vill. of Surfside Beach*,
   No. 14-22-00085-CV, 2023 WL 3476939 (Tex. App.—Houston [14th Dist.] May 16, 2023, no pet.) ...................................................... 21
*Moye v. United States*,
   218 F.2d 81 (5th Cir. 1955) ...................................................... 10
*Painter v. Amerimex Drilling I, Ltd.*,
   561 S.W.3d 125 (Tex. 2018)...................................................... 7, 8
*Ragas v. Tennessee Gas Pipeline Co.*,
   136 F.3d 455 (5th Cir. 1998) ...................................................... 5
*United States v. Culp*,
   346 F.2d 35 (5th Cir. 1965) ...................................................... 12
*Vasquez v. United States*,
   No. 4:23-cv-727-P, 2024 WL 2331801 (N.D. Tex. May 22, 2024) ...................................................... 25, 26
*Weaver v. U.S. Coast Guard*,
   53 F.3d 1282 (5th Cir. 1995) ...................................................... 14, 15
*Weaver*,
   53 F.3d...................................................... 15, 19, 24, 25

Statutes

28 U.S.C. 1346 ...................................................... 6
28 U.S.C. § 1291...................................................... 1
28 U.S.C. § 1331...................................................... 1

Rules

Fed. R. App. P. 34(a)(2)(C)...................................................................i

## Jurisdiction

This appeal arises from the district court's grant of the United States' motion for summary judgment, dismissing the case for lack of jurisdiction.  The district court had jurisdiction to adjudicate the motion under 28 U.S.C. § 1331.  Appellants Karen Monserrat Conchas Mesraje and Staci Sean Smith filed a timely notice of appeal.  ROA.295. This Court has jurisdiction to entertain the appeal under 28 U.S.C. § 1291.

## Statement of the Issue

Whether the district court properly determined that Appellants failed to carry their burden to show a waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA") when the undisputed facts establish that under Texas law, the government employee whose conduct formed the basis of the United States' alleged liability was not acting within the course and scope of his employment.

## Statement of the Case

United States Marine Corps ("USMC") Sergeant ("Sgt.") Avery Humberto Luengo was involved in a car accident with Appellants when he was going out to dinner during his off-duty evening hours on December 6, 2021.  ROA.286.  After graduating from the USMC recruiter school, Sgt. Luengo was assigned to the Recruiting Station

1

("R.S.") in San Antonio, Texas where he "would receive refresher training prior to serving as a new-join recruiter." ROA.286. While training at the R.S., Sgt. Luengo received housing at the Crowne Plaza Hotel, a per diem stipend, and permission to use a government motor vehicle ("GOV") for official business and meal trips. ROA.286.

Prior to the accident at issue, Sgt. Luengo finished his workday and was dismissed for the day. ROA.146. Once dismissed for the day, he could "do whatever [he] want[ed] to do . . . just so long as it's not illegal." ROA.146. For example, during his off-duty hours, Sgt. Luengo could visit a friend's house, go to a movie, or go to a ballgame. ROA.146. After being dismissed, on those free hours on December 6, 2021, Sgt. Luengo drove to the Crowne Plaza Hotel and changed into his civilian clothes. ROA.287. "[E]ntirely" out of his "choice," Sgt. Luengo decided to pick up food at a Chinese restaurant using the GOV. ROA.146. He had no "orders or instructions . . . on where to go eat," "how to get" to a restaurant, or "when to get there." ROA.146. Sgt. Luengo also did not have any official government materials or a recruit with him and was not conducting official business. ROA.146-47. "The decision to go to the Chinese restaurant, when to go, what to wear and how to get there was entirely" Sgt. Luengo's personal choice. ROA.147. He further testified that his meal trip "had nothing to do with the

United States Marine Crops or any military operations, other than the fact that [he] just happened to be in San Antonio" for the training. ROA.147.

On his way to the restaurant, Sgt. Luengo had a car accident with Appellants. ROA.287. Based on this accident, Appellants brought a lawsuit against the United States, alleging a claim of negligence under the FTCA. ROA.6-12.

After deposing Sgt. Luengo, the United States moved for summary judgment seeking to dismiss the case for lack of jurisdiction. ROA.125. The United States argued that Appellants failed to carry their burden to show the United States' unequivocal waiver of sovereign immunity under the FTCA because the undisputed evidence demonstrated that Sgt. Luengo was not acting within the course and scope of his employment at the time of the accident. ROA.125-37. Appellants responded in opposition. ROA.152-64. The district court agreed with the United States and held that Appellants failed to carry their burden. ROA.285-94. The court granted the motion for summary judgment and dismissed the case for lack of subject matter jurisdiction. ROA.294.

## Standard of Review

The Court reviews "a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving

party and drawing all reasonable inferences in that party's favor."
*Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013).

## Summary of the Argument

The district court properly determined that it lacks jurisdiction because Appellants failed their burden to show an unequivocal waiver of sovereign immunity under the FTCA.

## Argument

### I. Appellants bear the burden to demonstrate the unequivocal waiver of sovereign immunity here.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

"In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 212 (2021) (internal quotation marks omitted). "A claim is actionable if it alleges the six elements", including that an injury is caused by the negligent or wrongful act or omission of a government employee "while acting within the scope of his office or employment." *Id.* "[I]n

4

the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Id.* at 217. That means "[b]y its terms, [the FTCA's] waiver of sovereign immunity only applies when the tortfeasor acts within the scope of his employment." *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006). "Plaintiffs," like Appellants, "bear the burden of showing Congress's unequivocal waiver of sovereign immunity." *Freeman*, 556 F.3d at 334 (internal quotation marks omitted). That means Appellants bear the burden to demonstrate that Sgt. Luengo was acting within the course and scope of his employment at the time of the accident.

Appellants also bear the burden as a nonmovant "to show that a summary judgment should not be granted." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.* "Once a movant who does not have the burden of proof at trial makes a properly supported motion," as the United States did here, "the burden shifts to the nonmovant to show that a summary judgment should not be granted." *Id.* "A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Id.* In other words, "the

burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

## II. Appellants fail to carry their burden to show with competent material evidence an unequivocal waiver of sovereign immunity.

### A. In Texas, an employee is not acting within the course and scope of his employment when he leaves for a meal even during his business trip funded and authorized by an employer.

"The issue of whether an employee is acting within the scope of his employment for purposes of the FTCA is governed by the law of the state in which the wrongful act occurred." *Bodin*, 462 F.3d at 484. Government employees include "members of the military or naval forces of the United States who are acting in line of duty." *Garza v. United States*, 809 F.2d 1170, 1171 (5th Cir. 1987) (internal quotation marks omitted). "Whether military personnel are acting within the line of duty is determined by applicable state rules of *respondeat superior*." *Id.* Here, Texas law governs that question because the accident at issue occurred in San Antonio, Texas. *See* 28 U.S.C. 1346 ("[T]he United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). The fact that Sgt. Luengo was a servicemember does not expand the definition of his

6

employment's course and scope beyond that provided by Texas law. As the Court has held, "[t]he phrase 'line of duty' . . . has no broader significance than 'scope of his employment' as used in master and servant cases." *Cannon v. United States*, 243 F.2d 71, 73 (5th Cir. 1957). The "case is controlled by the [Texas] doctrine of respondeat superior." *Id.*

In Texas,[1] "to prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the worker (1) was an employee and (2) was acting in the course and scope of his employment." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). The parties do not dispute the first element. The only issue on appeal is whether Appellants have shown with competent summary judgment evidence that at the time of the accident, Sgt. Luengo was acting in line of duty—which means none other than acting in the course and scope of his employment under Texas law.

---

[1] As noted in the United States' motion for summary judgment, ROA.130-31, "Texas law has long recognized the distinction between workers' compensation claims under their statutory framework and the imposition of vicarious liability under the common law," *Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 378 (Tex. 2022). "[T]he common law principles that govern vicarious liability differ from the statutory definitions and framework that govern workers' compensation claims." *Id.* Here, Appellants do not argue that the definition of course and scope of employment under the statutory framework of workers' compensation claims applies here. *See generally* Appellants' Br. Appellants may not raise this argument in their Reply. "Arguments raised for the first time in a reply brief are forfeited." *Conway v. United States*, 647 F.3d 228, 237 n.8 (5th Cir. 2011).

Under Texas law, an employer's "vicarious liability arises only if the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Id.* "Under the 'coming-and-going rule,' an employee does not act within the course and scope of his employment when traveling to and from work." *Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 376 (Tex. 2022). "The rationale that informs the rule is that travelers on public roads are equally susceptible to the hazards of doing so, whether employed or not." *Id.* "Such travel hazards do not arise out of the business of an employer; thus, the law does not hold the employer liable for injuries resulting from engaging in these risks." *Id.* "[T]he special-mission exception to the coming-and-going rule may apply when travel involves the performance of regular or specifically assigned duties for the benefit of the employer." *Id.* (internal quotation marks omitted).

The Supreme Court of Texas in *Cameron* squarely refused to apply the special-mission exception when an employee who was on a business trip "decided for himself to travel . . . on his own time to have dinner and to restock his personal groceries and fuel." *Id.* at 377. Upon completing his shift for the day, like Sgt. Luengo did here, the employee at issue in *Cameron* had dinner with his supervisor in Pecos, Texas. *Id.* at 375. Subsequently, the employee

8

"drove to a nearby store to purchase food and drink for his personal needs and then to a gas station to refuel his truck." *Id.* After leaving a gas station, the employee had a car accident. *Id.* Around the time of the accident, despite being on a business trip, the employee in *Cameron*, like Sgt. Luengo, was "individually responsible for obtaining their own food and water." *Id.* at 377.

The court determined that at the time of the accident, the employee was not acting within the course and scope of his employment, and refused to hold the employer vicariously liable for the accident. *Id.* at 377-78. In reaching that decision, the court overruled the argument that an employee's trip to get water and food benefits an employer. *Id.* The court explained that "[t]his rationale . . . proves too much." *Id.* "Nearly every task that supports a worker's personal needs, including travel to and from work, indirectly benefits the employer. By traveling to the workplace, a worker makes his services available, and in that sense he furthers the affairs or business of his employer by making the journey." *Id.* (internal quotation marks omitted). "Not every journey, however, falls within the course and scope of an employment relationship." *Id.* "To except from the general rule [an employee's] travel to obtain personal groceries and fuel at his choice—and not at [an employer's] direction—would turn nearly any personal grocery errand into a special mission on an employer's

behalf, a concept that we rejected in *Painter*." *Id.* "Workers often travel for personal necessities during the workday or *leave for a meal* before returning to work, but these activities do not arise from the business of the employer. Rather, they are daily tasks in which workers and nonworkers alike engage, carrying the same attendant risks." *Id.* (emphasis added).

In so holding, the Supreme Court of Texas specifically rejected the argument that an employer "generally authorized" an employee's travel, as the USMC authorized Sgt. Luengo's trip here, as "unavailing" to show the scope of employment at the time of a car accident. *Id.* at 377-78. Likewise, an employer's "payment of a travel allowance is not sufficient to create a fact question as to whether an employee was acting within the course and scope of employment at a specific point." *Id.* at 378.

*Cameron* is consistent with this Court's prior published decision. Applying Texas law, the Court held that "a servant cannot be said to be on his master's business or acting within the scope of his employment while eating or on his way to eat" and that "the relation of master and servant must ordinarily be deemed suspended while he is going to and from his meals . . . and the master is not liable for the servant's negligence while so traveling to and from meals." *Moye v. United States*, 218 F.2d 81, 83 (5th Cir. 1955).

**B.  Binding precedent shows Sgt. Luengo was not acting within the course and scope of his employment at the time of the accident.**

Like the employee in *Cameron*, Sgt. Luengo had a car accident during his dinner trip to a Chinese restaurant which he took "entirely" out of his "choice."  ROA.146.  He had no "orders or instructions . . . on where to go eat," "how to get" to a restaurant, or "when to get there."  ROA.146. "The decision to go to the Chinese restaurant, when to go, what to wear and how to get there was entirely" the choice of Sgt. Luengo.  ROA.147.  This trip occurred after the USMC already dismissed Sgt. Luengo for the day. ROA.146; Appellants' Br. at 4.  At that time, he could "do whatever [he] want[ed] to do," including visiting a friend's house, going to a movie, or going to a ballgame.  ROA.146.  Thus, Sgt. Luengo voluntary decision to "leave for a meal" during his off-duty hours did "not arise from the business of the employer" but simply is one of many "daily tasks in which workers and nonworkers alike engage, carrying the same attendant risks." *Cameron*, 662 S.W.3d at 377.

In response, Appellants fail to address or even cite to *Cameron*—the leading decision directly on point. *See generally* Appellants' Br.  Instead, they attempt to impermissibly expand the course and scope of Sgt. Luengo beyond that provided by Texas law without proper legal support.  Appellants' Br. 12-19.  They rely on

this Court's decisions that significantly predate *Cameron*. *Id.* In decisions issued in 1965 and 1970—more than fifty years before *Cameron* was issued—the Court held that a soldier traveling for a change of permanent station was acting in line of duty because he was under the military order to travel, was "compensated for his travel time," and "was paid travel allowance in advance for travel by private conveyance." *Hallberg v. Hilburn*, 434 F.2d 90, 92-93 (5th Cir. 1970); *see United States v. Culp*, 346 F.2d 35 (5th Cir. 1965). At that time, the Court noted that this holding did not conflict with Texas law. *Hallberg*, 434 F.2d at 92-93.

*Hallberg's* and *Culp's* reliance on an employer's payment of a travel allowance and general authorization of a trip no longer finds support in Texas law. The Supreme Court of Texas clarified in *Cameron* that "payment of a travel allowance," an employer's general authorization of an employee's trip, and an employee's "implied authority to engage in travel on [the employer's] behalf," are all "not sufficient to create a fact question as to whether an employee was acting within the course and scope of employment at a specific point." 662 S.W.3d at 377-78. The court explained that those points concern "general right to control the work of an employee" and that "may answer whether the law recognizes an employment relationship sufficient to impose vicarious liability." *Id.* at 378. "When such a relationship exists, however, imposing

liability in a particular instance hinges on an *objective* assessment of *whether the employee was doing his job at the time.*"   *Id.* (emphasis added) (internal quotation marks omitted).  "The employer's right to control the work, having already been determined in establishing the employer-employee relationship, is not part of this analysis."  *Id.*

*Cameron* governs the analysis here regardless of *Hallberg* and *Culp* or the fact that Sgt. Luengo was a servicemember at the time of the accident because a servicemember's conduct while in "'line of duty' . . . has no broader significance than 'scope of his employment' as used in master and servant cases" and the question is "controlled by the [state-law] doctrine of respondeat superior."  *Cannon*, 243 F.2d at 73.

*Cameron*'s focus on an employee's activity at the time of tortious conduct is consistent with *Craft v. United States*, 542 F.2d 1250 (5th Cir. 1976).  In *Craft*, a soldier living in a military housing unit injured a child while mowing the unit's lawn.  *See id.*  The Court held that the soldier was acting within the course and scope of his military employment at the time of the injury because "Soldier's duty to mow his portion of the lawn was specified in written regulations, during oral briefings regarding his responsibility for maintenance of certain aspects of his quarters, through direct questioning by Soldier of a superior, and by a direct

13

order given to Soldier." *Id.* at 1255. "Failure to comply meant possible imposition of the panoply of sanctions available to Government." *Id.* Thus, "[a]t the time of Child's injury, Soldier was performing a specific duty which had been assigned to him to cut his portion of the lawn." *Id.*

After reviewing the Court's precedents discussed above, the Eleventh Circuit held that in those cases, "the United States was exposed to respondeat superior liability precisely because *the act giving rise to the alleged negligence* had been undertaken not at the discretion of the soldier, but rather at the command of the military in order to further its purposes." *Bennett v. United States*, 102 F.3d 486, 493-94 (11th Cir. 1996) (emphasis added). Thus, the Eleventh Circuit focused on the compulsory nature of the tortious conduct at issue and held that a soldier who accidentally shot another solider during off-duty hours was not acting within the course and scope of his military employment. *Id.* at 494.

Likewise, this Court, albeit in an unpublished opinion, followed the same approach. *Weaver v. U.S. Coast Guard*, 53 F.3d 1282 (5th Cir. 1995). In *Weaver*, the Court held that under Texas law, a coast guardsman was not acting in the course and scope of his employment at the time of a car accident because at that time, the guardsman was temporarily off the ship and was "free to do as [he] pleased during the four-hour liberty." *Id.* at *1. "While the officer

who announced the liberty might have suggested that the crewmen tend to their personal affairs, purchase supplies, or visit family members, he did not order the crewmen to do so." *Id.* Given that liberty, the guardsman "was neither acting in the course and scope of his employment nor was he on a 'special mission'" at the time of his accident. *Id.*

That is precisely the case here. Sgt. Luengo was "leav[ing] for a meal," which does "not arise from the business of the employer. Rather, they are daily tasks in which workers and nonworkers alike engage, carrying the same attendant risks." *Cameron*, 662 S.W.3d at 377. Like the guardsman in *Weaver*, Sgt. Luengo was "free to do as [he] pleased during" his off-duty evening hours on December 6, 2021. *Weaver*, 53 F.3d at *1. His supervisor "did not order" Sgt. Luengo to go to dinner or travel to a Chinese restaurant. *Id.* "The critical [point] here is that, unlike the soldier in *Craft,* who was required by specific regulation to mow the lawn surrounding his quarters, [Sgt. Luengo] was *not* compelled in any sense to" drive the

GOV[2] to a Chinese restaurant for dinner during his off-duty hours. *Bennett*, 102 F.3d at 493. Sgt. Luengo "made a voluntary decision" to operate the GOV and get dinner at a Chinese restaurant; "his employer took no part in this choice." *Id.* "More to the point, the absence of compulsion is powerful evidence that the [USMC] did not think its purpose furthered by the soldier's" meal trip. *Id.*

Appellants fail to point to any regulation or order that required Sgt. Luengo to travel for dinner, eat at any specific restaurant, or to conduct any particular activity upon being dismissed. *See generally* Appellants' Br. In fact, they do not even suggest that Sgt. Luengo was traveling to or from *work*, as they explicitly concede Sgt. Luengo "took a direct route from the hotel to the restaurant." Appellants' Br. 18. "It is the absence of any specific requirement to perform the underlying act—the soldier's threshold decision to

---

[2] There is a "a rebuttable presumption that an employee driving a company-owned vehicle is presumed to be in the course and scope of his employment while driving the vehicle." *EAN Holdings, LLC v. Arce*, 636 S.W.3d 290, 296 (Tex. App.—Fort Worth 2021, pet. denied). "However, this presumption is not evidence but rather a rule of procedure . . . that is overcome when positive evidence to the contrary is introduced." *Id.* (internal quotation marks omitted). "In other words, if there is evidence that the driver was on a personal errand, or otherwise not in the furtherance of his employer's business, the presumption vanishes." *Id.* (internal quotation marks omitted). Here, Appellants do not argue that this rebuttal presumption applies here. Even assuming they do, the presumption "vanishes" because Sgt. Luengo was not acting "in the furtherance of" the USMC's business for the reasons stated herein. *Id.*

16

[travel for dinner]—that distinguishes this case from *Craft*." *Bennett*, 102 F.3d at 493.

Appellants ignore this absence and ask the Court to consider other factors, including control of time, the purpose of the mission, and the means and manner of travel. Appellants' Br. 14-15. They argue that Sgt. Luengo had the general authorization for his trip to San Antonio, used the GOV to get his meals, and received a per diem stipend. Appellants' Br. 14. They assert that Sgt. Luengo took his trip during his "working hours—despite being dismissed and changing into civilian clothes after attending the training" and that the USMC maintained the general authority and control over Sgt. Luengo. Appellant's Br. 16-19.

The Supreme Court of Texas rejected those factors as only showing "general right to control the work of an employee," which "may answer whether the law recognizes an employment relationship sufficient to impose vicarious liability." *Cameron*, 662 S.W.3d at 378. They do not relate to the key issue on appeal—"an objective assessment of whether the employee was doing his job *at the time*." *Id.* (emphasis added) (internal quotation marks omitted).

That means it is irrelevant whether Sgt. Luengo "was not on leave or liberty" or had the general authorization for the trip or the

use of the GOV,[3] Appellants' Br. 16-17, so long as Sgt. Luengo was traveling for his meal without any direction from the USMC. As the Supreme Court of Texas noted, "workers often travel for personal necessities during the workday or leave for a meal before returning to work, but these activities do not arise from the business of the employer," *Cameron*, 662 S.W.3d at 378. "[I]t is a well-established principle that merely because an employee is on duty does not mean that the person is always acting within the scope of her employment." *City of Houston v. Sanchez*, No. 14-23-00152-CV, 2024 WL 3713206, at *3 (Tex. App.—Houston [14th Dist.] Aug. 8, 2024, no pet.). "[R]egardless of when [Sgt. Luengo's] designated work hours ended," *id.*, it is undisputed that "unlike the solder in *Craft*," Sgt. Luengo "was *not* compelled in any sense to" travel for dinner during his off-duty hours."[4] *Bennett*, 102 F.3d at 493. The USMC "took no part in this choice." *Id.* "[T]he absence of compulsion is powerful evidence that the [USMC] did not think its purpose furthered by" his meal trip. *Id.* The USMC's "payment of a travel allowance" or the permissive use of the GOV "is not

---

[3] The USMC *permitting* Sgt. Luengo to use the GOV for meals does not equate to *mandating* him to get meals using the GOV. Also, Sgt. Luengo's permissive use of the GOV does not affect the conclusion that his *activity* of getting a meal at the time of the accident was not *objectively* in furtherance of the USMC's business. Yet, Appellants conflate those two points.

[4] Appellants appear to concede this point by explicitly acknowledging that Sgt. Luengo "would not have faced discipline for leaving the Crowne Plaza hotel to get food." Appellant's Br. 17.

sufficient" to change this conclusion. *Cameron*, 662 S.W.3d at 378; *EAN Holdings*, 636 S.W.3d at 296. Thus, Sgt. Luengo's dinner trip during his off-duty hours was "unrelated to any employment relationship with the military, and [was] not undertaken to further his employer's business." *Bennett*, 102 F.3d at 494.

Even in the military context as here, the USMC's authority to regulate a soldier's conduct "cannot, standing alone, convert a soldier's private act [at issue] into conduct somehow designed to further or benefit his employer's purpose." *Bennett*, 102 F.3d at 492. The general authority to regulate servicemembers does not change the fact that Sgt. Luengo was "free to do as [he] pleased" around the time of the accident and that his supervisor "did not order" him to travel for dinner or eat at a Chinese restaurant. *Weaver*, 53 F.3d at *1. In fact, Sgt. Luengo testified that his dinner trip "had nothing to do with the [USMC] or any military operations, other than the fact that [he] just happened to be in San Antonio" for the training. ROA.147. The case law discussed above establishes that the factors argued by Appellants do "not overcome the undisputed evidence" that Sgt. Luengo was on his way to dinner during his off-duty hours. *Cameron*, 662 S.W.3d at 378.

Appellants fail to supply any binding authority that shows otherwise or contradicts *Cameron*. Instead, they cite to *Garcia v. United States*, No. C-12-108, 2012 WL 4867513, at *3 (S.D. Tex. Oct.

12, 2012), an unpublished district court opinion that has no precedential value. Appellants' Br. 15-19. It also precedes *Cameron* by eleven years and is inconsistent with recent case law. In finding a servicemember was acting in line of duty under Texas law, the court in *Garcia* relied on factors that the Supreme Court of Texas held were irrelevant to the issue on appeal, including control of time, purpose of the mission, and means and manner of travel. *Id.* at *3.

Contrary to *Garcia*, following *Cameron*, courts have repeatedly rejected as "insufficient to create a fact issue on whether [an employee] was acting within the course and scope of his employment" arguments those raised by Appellants. *Duran v. United States*, No. 2:20-CV-00179, 2023 WL 2499941, at *5 (S.D. Tex. Feb. 21, 2023). In determining the course and scope of employment, a district court overruled the arguments that at the time of the accident, an employee "receive[d] his employer's approval to use the vehicle, his employer [paid] for the vehicle, and he . . . used it for a specific purpose . . . as authorized by his employer." *Id.* Likewise, even when an employee was on "24 hour call" and was wearing a company shirt—in contrast, Sgt. Luengo was dismissed for the day and in his civilian clothes—at the time of a car accident, the Texas Fourteenth Court of Appeals determined those facts fail to give "rise to a genuine issue of material fact that

[an employee] was acting in furtherance of the [an employer's] interests, rather than his own personal interests, at the time of the accident." *Martin v. Vill. of Surfside Beach*, No. 14-22-00085-CV, 2023 WL 3476939, at *4 (Tex. App.—Houston [14th Dist.] May 16, 2023, no pet.). The court held that the authority given to an employee, the payment by an employer, or duty hours were irrelevant because "[u]ltimately, the question is whether an employee's activity has some connection with, and is being undertaken in furtherance of, the employer's business." *Id.* at *5 (emphasis added); *see also Barrier v. United States*, No. DR-23-CV-58-AM, 2025 WL 2409084 (W.D. Tex. June 18, 2025) (holding that a Customs and Border patrol agent in uniform leaving work was not acting within the course and scope of employment at the time of an accident); *Sanchez*, 2024 WL 3713206, at *3. Those opinions consistently show that the factors argued by Appellants, including the permissive use of the GOV, do not pertain to the *objective* analysis of whether an employee's *activity* benefits an employer other than making his service available. Appellants fail to provide any binding authority rebutting *Cameron* and its progeny.

### C. Appellants fail to cite to binding authorities or material facts in the record that support their position.

Appellants otherwise argue that the "coming-and-going" rule should not apply here and that even if it does, the special mission

exception should apply. Appellants' Br. 19-25. For the reasons stated above, *Cameron* and its progeny show otherwise. Instead of addressing them, Appellants continue to rely on facts that *Cameron* already rejected as irrelevant, and cite to inapposite case law that is neither binding nor applicable here. Appellants' Br. 19-25.

First, Appellants argue that because Sgt. Luengo was in San Antonio for his training, his meal trip "does not fall within the coming-and-going rule." Appellants' Br. 20. Likewise, Appellants rely on other irrelevant factors, including Sgt. Luengo's subjective belief that he was on a "special mission" while in San Antonio from which he did not deviate, his permissive use of the GOV,[5] and his receipt of a per diem stipend. Appellants' Br. 22-25.

Appellants' argument is meritless, as *Cameron* holds that general authority, the general purpose of a business trip, and a payment of a travel allowance do not relate to "an objective assessment of whether the employee was doing his job at the time." 662 S.W.3d at 378 (internal quotation marks omitted). Neither does their argument rebut the "critical" point that "unlike the solder in *Craft*," Sgt. Luengo "was *not* compelled in any sense to" travel for dinner during his off-duty hours." *Bennett*, 102 F.3d at 493.

---

[5] This factor is irrelevant for the reasons explained in Footnote 2.

To the extent Sgt. Luengo subjectively believed otherwise and thought he was on a "special mission," this belief is irrelevant.[6] It goes to the ultimate question of law—whether the special mission exception applies here. If the special mission exception applies, that means Sgt. Luengo was acting within the course and scope of his employment. *Id.* at 376. But "[u]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law," like that of Sgt. Luengo, "are insufficient to defeat a motion for summary judgment." *Clark*, 110 F.3d at 297. The same is true with the determination of Sgt. Luengo's supervisor that Sgt. Luengo was acting within the course and scope of his employment at the time of the accident. ROA.225. Whether Sgt. Luengo was acting within course and scope of his employment is the ultimate legal question before this Court, and a witness's subjective belief or opinion in that regard is not "evidence establishing the existence of a material *factual* dispute." *Clark*, 110 F.3d at 297 (emphasis added).

Appellants also inexplicably attempt to differentiate a trip for a meal from personal errands, arguing that the USMC did not allow Sgt. Luengo to use the GOV for personal errands but permitted the use for meals. Appellants' Br. 14, 17. Using this permission,

---

[6] The belief that our nation's premiere armed force is on a "special mission" when its servicemember goes out to eat at a Chinese restaurant is absurd and contrary to common sense.

Appellants attempt to "convert [Sgt. Luengo's] private act [of getting dinner] into conduct somehow designed to further or benefit his employer's purpose." *Id.* at 17; *Bennett*, 102 F.3d at 493. Whether the trip was for a meal or personal errands, the Supreme Court of Texas already "rejected the contention that general authority suffices to show that an employee is acting in furtherance of the employer's business at the time of travel" and held "[w]orkers often travel for personal necessities during the workday or *leave for a meal* before returning to work, but these activities do not arise from the business of the employer." *Cameron*, 662 S.W.3d at 377 (emphasis added).

The facts that Sgt. Luengo traveled to purchase food while in San Antonio, where he was ordered to station, and that the USMC permitted the use of the GOV for meal trips do not change this conclusion. Appellants' Br. 22. The USMC "nor its supervisory personnel directed [Sgt. Luengo] to travel to [a Chinese restaurant] or to purchase food, water, or fuel for other workers or for the worksite generally." *Cameron*, 662 S.W.3d at 377. Instead, Sgt. Luengo was "individually responsible for obtaining [his] own food and water" and "decided for himself to travel to [a Chinese restaurant] on his own time to have dinner." *Id.* Again, the "critical" point here is that "unlike the soldier in *Craft,* who was required by specific regulation to mow the lawn surrounding his

quarters," Sgt. Luengo "was free to do as [he] please," *Weaver*, 53 F.3d at *1, and "was *not* compelled in any sense to" leave his hotel for dinner at a Chinese restaurant, *Bennett*, 102 F.3d at 493.

Lastly, Appellants cite to inapposite and distinguishable case law, including *Lutz v. United States*, 685 F.2d 1178, 1183 (9th Cir. 1982); *Davis v. Amazon.com Servs., LLC*, No. 6:20-CV-01178-JCM, 2022 WL 18034360 (W.D. Tex. Oct. 6, 2022); *Garcia*, 2012 WL 4867513, at *2; and *Vasquez v. United States*, No. 4:23-cv-727-P, 2024 WL 2331801 (N.D. Tex. May 22, 2024). None of these decisions are binding or applicable.

Among those decisions, only *Lutz* is a decision by another circuit. In *Lutz*, the Ninth Circuit held a solider was in line of duty when a solider failed to control his dog and the dog attacked a girl. 685 F.2d at 1182-83. In reaching that holding, the court explained that the solider was living in base housing and was required to comply with a base regulation on owning pets. *Id.* The Eleventh Circuit held, "[t]he holding in *Lutz* has been rejected by three of our sister Circuits and several district courts." *Bennett*, 102 F.3d at 491. The court explained, "[t]hese opinions recognize that some regulations governing the conduct of military personnel simply do not impose requirements within a soldier's scope of employment." *Id.* (internal quotation marks omitted). The court noted that "the Ninth Circuit's opinion provided no limiting principle on the

25

Government's vicarious liability, effectively making the United States an insurer for an entire universe of bizarre accidents that might occur on a military installation." *Id.* The Eleventh Circuit criticized that "*Lutz* imposes on the United States a risk of respondeat superior liability far beyond that of its private employer counterparts." *Id.* The Court should follow four other circuits and reject *Lutz*.

The remaining three decisions are unpublished district court decisions that have no precedential value. Two of them also predate *Cameron*. *Davis v. Amazon.com Servs., LLC*, No. 6:20-CV-01178-JCM, 2022 WL 18034360 (W.D. Tex. Oct. 6, 2022); *Garcia*, 2012 WL 4867513, at *2; and *Vasquez v. United States*, No. 4:23-cv-727-P, 2024 WL 2331801 (N.D. Tex. May 22, 2024). Although *Vasquez* postdates *Cameron*, it is readily distinguishable from *Cameron* and this case. Unlike the employee in *Cameron* and Sgt. Luengo, who traveled for food and water during their free time, the government employee in *Vasquez* had an accident while traveling directly to an assigned work site. 2024 WL 2331801 at *4. Instead of trying to purchase food, like Sgt. Luengo did, the employee in *Vasquez* "was traveling to perform work-related activities at the direction of his employer outside his ordinary duty station." *Id.* *Vasquez* is distinguishable from this case.

Because Appellants fail to point to any binding authority contradicting *Cameron* or material facts on the record showing that Sgt. Luengo's activities fell within the course and scope of his activities, they failed to carry their burden to show the unequivocal waiver of sovereign immunity under the FTCA here.

## Conclusion

For all these reasons, this Court should affirm the district court's grant of summary judgment for the United States.

Respectfully submitted,

Justin R. Simmons
United States Attorney

By:    */s/ Huiju Jeon*
Huiju Jeon
Darryl Vereen
Assistant United States Attorney

## Certificate of Service

I certify that on October 3, 2025, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

/s/ Huiju Jeon
Huiju Jeon
Assistant United States Attorney

\*   \*   \*

## Certificate of Compliance

I certify that:

(1) this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6268 words, excluding the parts of the brief exempted by Rule 32(f); and

(2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size 14 Century Schoolbook font.

Dated:   October 3, 2025

/s/ Huiju Jeon
Huiju Jeon
Assistant United States Attorney